

# SUPREME COURT OF ARKANSAS



No. CV-14-369

| | |
|---|---|
| DORALEE CHANDLER, CANDIDATE FOR CIRCUIT JUDGE, DISTRICT 20, DIVISION 5 <br> APPELLANT | **Opinion Delivered** May 14, 2014 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION <br> [NO. 60cv-14-1285] |
| V. | |
| MARK MARTIN, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF STATE FOR THE STATE OF ARKANSAS; JAMES BARGAR, PAUL FOSTER, AND BETTY PICKETT, IN THEIR OFFICIAL CAPACITIES AS COMMISSIONERS OF THE FAULKNER COUNTY ELECTION COMMISSION; L.C. RATCHFORD, DOYLE RAGLAND, AND G.C. BLAIR, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE SEARCY COUNTY ELECTION COMMISSION; STEPHEN JAMES, JIM KIRKENDOLL, AND BOB PATTERSON, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE VAN BUREN COUNTY ELECTION COMMISSION; AND HARRY G. FOSTER II <br> APPELLEES | HONORABLE WENDELL GRIFFEN, JUDGE <br><br> <u>AFFIRMED</u>. |
| LESLIE STEEN, IN HIS OFFICIAL CAPACITY AS CLERK OF THE SUPREME COURT OF ARKANSAS AND ARKANSAS COURT OF APPEALS <br> THIRD-PARTY APPELLANT | |

V.

HARRY G. FOSTER II
      THIRD-PARTY APPELLEE

**CLIFF HOOFMAN, Associate Justice**

Appellant Doralee Chandler and third-party appellant Leslie Steen, in his official capacity as Clerk of the Supreme Court of Arkansas and Arkansas Court of Appeals, (collectively "appellants") appeal from a Pulaski County Circuit Court's order, denying Chandler's petition for writ of mandamus and declaratory judgment and granting the third-party complaint filed by appellee the Honorable Harrison (Harry) G. Foster II ("Foster"). This court has jurisdiction of this appeal under Arkansas Supreme Court Rule 1-2(a)(4), as this appeal pertains to elections and election procedures. On appeal, Chandler contends that (1) the circuit court improperly determined that Foster was not "unlicensed" pursuant to Rule VII(C) of the Rules Governing Admission to the Bar ("Rule VII(C)" or "the Rule"), thereby improperly finding that he is qualified to seek the position of circuit judge despite his failure to timely pay his licensing fee four of the six consecutive years prior to the time for taking office, if elected; and (2) the circuit court improperly determined that Foster's suspension of his license to practice law due to his failure to timely renew his fee was a violation of his due-process rights. Steen also contends on appeal that the trial court erred in declaring Rule VII(C) unconstitutional and should be reversed. We affirm the circuit court.

This case arose after Doralee Chandler, a registered voter residing in Judicial District

2

20 and a candidate for Judicial District 20, Circuit Court Division 5, filed a petition for issuance of a writ of mandamus and for declaratory judgment against Mark Martin, in his official capacity as the Secretary of State for the State of Arkansas; James Bargar, Paul Foster, and Betty Pickett, in their official capacities as the Commissioners of the Faulkner County Election Commission; LC Ratchford, Doyle Ragland, G.C. Blair, in their official capacities as the Commissioners of the Searcy County Election Commission; Stephen James, Jim Kirkendoll, and Bob Patterson, in their official capacities as the Commissioners of the Van Buren County Election Commission; and Foster. Subsequently, Chandler filed an amended petition for issuance of a writ of mandamus and for declaratory judgment. In this petition, she alleged that Foster's license as an attorney in the State of Arkansas was suspended pursuant to Rule VII(C) for 77 days in 2013, from March 2 through May 17; for 64 days in 2012, from March 2 through May 4; for 64 days in 2011, from March 2 through May 4; and for 11 days in 2009, from March 2 through March 11. Therefore, she alleged that Foster was not a qualified or eligible candidate for the circuit judge position as he was not a "licensed attorney" for the constitutionally mandated six-year time period preceding the assumption of the office. As such, she prayed that the circuit court issue a declaratory judgment that Foster was unqualified and an ineligible candidate for the circuit judge position; that the circuit court issue a writ of mandamus to Martin to order him to strike and/or remove Foster from the list of ballot-eligible candidates; and that the circuit court issue a writ of mandamus to the Commissioners of the Faulkner, Searcy, and Van Buren County Boards of Election Commissioners to order them not to tabulate any votes for Foster.

3

SLIP OPINION

Martin, Foster, and Faulkner County Election Commissioners James Bargar, Paul Foster, and Betty Pickett, in their official capacities, filed responses. Additionally, Foster filed a third–party complaint. In his complaint, he alleged that Rule VII(C) was unconstitutional under Article II of the Arkansas Constitution and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, because the Rule automatically suspended his license without procedural due process. Furthermore, he alleged that the letter sent by Steen prior to any suspension mentioned delinquent fees as the only consequence for failing to pay license fees by March 1. Thus, Foster prayed for the circuit court to deny Chandler's petition, grant his complaint, declare Rule VII(C) unconstitutional, enjoin Steen from enforcing the automatic suspension of delinquent lawyers from the practice of law, and award him attorney's fees and costs against Chandler only.

At the hearing, Steen testified that his duties included licensing all lawyers, keeping a list of all lawyers, and collecting license fees. He testified that license fees were due by March 1st of every year, unless that date fell on a weekend, and that delinquency therefore attached on the next day. A form letter is sent out to all licensed attorneys in December, informing lawyers of the due dates for fees. This letter in the past has not included any warning that an attorney's license is automatically suspended if fees are not paid on time. After an attorney's license has been automatically suspended for delinquent fees, Steen testified that his office sends a form letter informing a delinquent attorney that the Rule automatically suspended the lawyer from the practice of law and includes the following additional paragraph:

Our records show that you are delinquent in paying your annual license fee, however

4

there is certainly the possibility this office made a mistake in posting or receipting your dues. If you think we are in error, please contact us. Otherwise, please remit a check in the amount of $300.00 to insure your good standing.

Furthermore, Steen testified,

| [ROSENZWEIG:] | Okay. And there is no provision for a hearing before this letter goes out? |
|---|---|
| [STEEN:] | That's correct. |
| [ROSENZWEIG:] | So, for instance, let's say that someone had -- hypothetically speaking, someone had mailed a check in and it somehow didn't get there but there's evidence of mailing, for instance, or FedExing, whatever. That person would not necessarily have an opportunity to say, "Hey, I mailed it" or "you got it" before you -- before the letter goes out? |
| [STEEN:] | No. If there's evidence that somebody has mailed something timely -- |
| [ROSENZWEIG:] | Yes. |
| [STEEN:] | -- as long as the letter is postmarked by March the 1st -- |
| [ROSENZWEIG:] | Yes. |
| [STEEN:] | -- or over, I will waive the delinquent fee in that regard. |
| [ROSENZWEIG:] | And I understand that. No. My question isn't whether they owe the delinquent fee or not. My question is let's say a person mails it on February 28th or 27th or FedExes it, but it never gets to you. I mean it just never gets to you and that person doesn't find out that it never got to you before you send the letter out. There's no -- there's no provision for a hearing in front of a court? |
| [STEEN:] | There is not, no. |

A running list of suspended lawyers is kept on the computer, and Steen testified that approximately 700 to 900 attorneys fail to pay their fees on time each year, which is approximately 8 to 10 percent of all licensed attorneys. Subsequently, Steen testified that, in May of each year, a list of suspended lawyers at that time is sent to all the judges in the state.

Foster also testified at the hearing. He did not contest the dates alleged in which he failed to pay his license fees on time. After the circuit court heard all motions and oral

SLIP OPINION

SLIP OPINION

arguments made by the parties, the circuit court announced its ruling, and a written order was filed on April 16, 2014. In a very detailed sixteen-page order, the circuit court found the following in relevant part:

8. Foster has been delinquent in paying the annual fee for his attorney's license, which is due no later than March 1 of each year. He paid the annual fee, plus a $100 late penalty, on the following occasions: March 7, 2007; March 6, 2008; March 12, 2009; May 4, 2011; May 4, 2012; and May 17, 2013.

9. Pursuant to Rule VII(C) of the Rules Governing Admission to the Bar, Foster's privilege to practice law pursuant to his law license was automatically suspended for non-payment of the annual license fee, without prior notice to him, for the following dates: between March 2 and March 7, 2007; March 2 and March 6, 2008; March 2 and March 12, 2009; March 2 and May 4, 2011; March 2 and May 4, 2012; and March 2 and May 17, 2013.

10. Foster's privilege to practice law pursuant to his law license was automatically reinstated after he paid his license fee and the required $100 late penalty in each instance previously mentioned.

11. Foster was not notified that his privilege to engage in the practice of law pursuant to his license was suspended in any instance before the automatic suspension mandated by Rule VII(C) went into effect.

### Conclusions of Law

1. Amendment 80, Section 16(B) to the Constitution of Arkansas states the qualifications and term of office for Circuit Judges as follows: "Circuit Judges shall have been licensed attorneys of this state for at least six years immediately preceding the date of assuming office."

2. Foster has been a licensed attorney of the state of Arkansas since 1978, and for at least six years immediately before he filed his candidacy for Circuit Judge, Twentieth Judicial District, Division 5. No evidence indicates that he has been an unlicensed lawyer at any time since he was admitted to the Arkansas Bar in 1978.

3. Rule VII(C) of the Rules Governing Admission to the Bar, which states that "[f]ailure to pay the annual license fee . . . shall automatically suspend the delinquent lawyer from the practice of law in Arkansas," does not operate to de-license an attorney licensed by the Arkansas Supreme Court. As such, the automatic suspension mandated by Rule VII(C) during the period that Foster was delinquent in paying his annual license fee did not disqualify him from seeking or holding office as a Circuit Judge for the purposes of compliance with Amendment 80, Section 16(B) to the Constitution of Arkansas. Chandler's petition for writ of mandamus and declaratory judgment is DENIED.

4. Automatic suspension of Foster's ability to practice law pursuant to his law license during the periods that he was delinquent in pay the annual license fee, without advance notice and without affording him any pre-suspension opportunity to be heard before the suspension took effect, denied Foster due process of law in violation of the Fourteenth Amendment to the U.S. Constitution. Foster's third-party complaint to declare Rule VII(C) of the Rules Governing Admission to the Bar unconstitutional and unenforceable is GRANTED.

. . . .

7. The license to practice law in the state of Arkansas is a privilege that vests one who holds it with a property right protected by the due process provisions of the Arkansas and U.S. Constitutions. As such, suspension of an attorney's privilege to engage in the practice of law pursuant to his license involves state action that affects important interests of the licensee in pursuing a livelihood, and cannot be validly imposed without procedural due process.

. . . .

For the foregoing reasons, Chandler's petition for writ of mandamus and for declaratory judgment is DENIED. Foster's third-party complaint to declare Rule VII(C) unconstitutional, unenforceable, and enjoined is GRANTED.

Steen and Chandler filed notices of appeal. This case was expedited with the parties filing simultaneous briefs.

Appellant Chandler contends that the circuit court erred in determining that Foster was not "unlicensed" pursuant to Rule VII and in improperly finding that he is qualified to seek the position of circuit judge despite his failure to timely pay his licensing fee for four of the six consecutive years prior to the time for taking office, if elected. Chandler specifically contends that Foster is an ineligible candidate under amendment 80, section 16(B) of the Arkansas Constitution ("amendment 80"), because his license was automatically suspended pursuant to Rule VII(C). Foster and the Faulkner County Election Commission disagree. Martin filed a brief in response, but he only explained that the Secretary of State and the County Board of Election Commission are ministerial entities and do not have the power to

exercise any discretion concerning the eligibility of a candidate. They followed the circuit court's order and included Foster's name on the ballot as a candidate. Because the ballots have already been printed and many absentee voters have already marked and returned their ballots with early voting having started on May 5, 2014, appellants' available remedy is limited under these circumstances, and they request that the circuit court's decision be upheld.

This court reviews a circuit court's interpretation of the constitution de novo because it is for this court to determine what a constitutional provision means. *Arnold v. State*, 2011 Ark. 395, 384 S.W.3d 488; *Stromwall v. Van Hoose*, 371 Ark. 267, 272, 265 S.W.3d 93, 98 (2007). Furthermore, this court construes a rule using the same means and canons of construction used to interpret statutes. *McNabb v. State*, 367 Ark. 93, 238 S.W.3d 119 (2006). Issues of statutory interpretation are reviewed de novo, and this court is not bound by the circuit court's determination. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179. However, this court will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *Cockrell v. Union Planters Bank*, 359 Ark. 8, 194 S.W.3d 178 (2004). The basic rule of statutory construction is to give effect to the intent of the legislature. *Calaway v. Practice Mgmt. Servs., Inc.*, 2010 Ark. 432. Where the language of a statute is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *Id*. In considering the meaning of a statute, this court construes it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id*. This court construes the statute so that no word is left void, superfluous, or insignificant, and this court gives meaning and effect to every word in the

statute, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Brown v. State*, 375 Ark. 499, 292 S.W.3d 288 (2009). However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Brock, supra.*

Chandler maintains that the circuit court ignored the strict language of Rule VII and amendment 80. Amendment 80, section 16(B) of the Arkansas Constitution provides, "Circuit Judges shall have been licensed attorneys of this state for at least six years immediately preceding the date of assuming office. They shall serve six-year terms." Furthermore, Rule VII(C) states that a "[f]ailure to pay the annual license fee provided in subsection A of this Section shall automatically suspend the delinquent lawyer from the practice of law in Arkansas."

We addressed this same issue in *Kelly v. Martin*, 2014 Ark. ___, which is being handed down this same date. In *Kelly*, John K. Kelly challenged the Honorable Timothy Davis Fox's eligibility to be a candidate under amendment 80 for a judicial race because Fox's license to practice law was automatically suspended because Fox failed to timely pay his 2013 license fees pursuant to Rule VII(C). We held that under amendment 80 Fox was a "licensed attorney[] of this state for at least six years immediately preceding the date" he would assume office because he nevertheless remained a licensed attorney during the period of his suspension and his license was not terminated. *Id.* In the present case, we also hold that Foster was a licensed attorney during his suspension as required by amendment 80, for the same reasons in *Kelly*.

As such, we affirm the circuit court's denial of Chandler's petition for writ of mandamus and declaratory judgment.

Next, appellants Chandler and Steen both contend that the circuit court improperly determined that Foster's automatic suspension of his license to practice law due to his failure to timely pay his license fee pursuant to Rule VII(C) was a violation of his due process. Chandler argues that a law license is a privilege that Foster voluntarily gave up when he failed to pay his annual fee and that he was, therefore, not entitled to due process. Steen argues that the Rule is constitutional because this court stated in *In re Lewis* that "[a] member of the Bar is charged with the knowledge that failure to pay the Supreme Court license fee will result in his suspension." 308 Ark. 610, 611, 826 S.W.2d 264, 264 (1992). Furthermore, he argues in his brief that his office sends a letter to delinquent attorneys before a list is sent to judges in the state and that "the balancing act between any embarrassment felt by the delinquent lawyer versus the interest of this Court in its superintending powers governing the Bar of this State weighs heavily in favor of the validity and constitutionality of this Rule." Foster and the Faulkner County Election Commission disagree.

Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he or she is deprived of property by state action. *State of Wash. v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999). In that regard, the concept of due process requires neither an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. *Id.* Instead, what process must be afforded is determined by context, dependent upon the nature

SLIP OPINION



of the matter or interest involved. *Id.*

The United State Supreme Court has recognized that "the requirements of procedural due process must be met before a State can exclude a person from practicing law." *Willner v. Comm. on Character and Fitness*, 373 U.S. 96, 102 (1963). Furthermore, in *Arnold v. Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991), this court cited with approval to the Kansas Supreme Court.

> Attorneys are licensed by the state to practice their profession; but so are other professionals, such as architects, engineers, and physicians. One who practices his profession has a property interest in that pursuit which may not be taken from him or her at the whim of the government without due process.

*Arnold*, 306 Ark. at 301, 813 S.W.2d at 774 (quoting *State ex rel. Stephan v. Smith*, 747 P.2d 816 (1987)). This court has recognized that the practice of law is a privilege and not a right, but one cannot summarily restrict a lawyer's ability to exercise the privilege. *Donovan v. Sup. Ct. Comm. on Prof'l Conduct*, 375 Ark. 350, 290 S.W.3d 599 (2009). Nevertheless, it is well settled that any protections to a law license are "subject to the very lowest of review under the Due Process and Equal Protections Clauses to the Constitution." *Cambiano v. Neal*, 342 Ark. 691, 703, 35 S.W.3d 792, 799 (2000).

In this case, under the plain language of the Rule as interpreted above, no due process is afforded prior to a lawyer's license being suspended. The Rule states that "[f]ailure to pay the annual license fee provided in subsection A of this Section shall automatically suspend the delinquent lawyer from the practice of law in Arkansas." Although Steen cites to this court's statement in *In re Lewis* that "[a] member of the Bar is charged with the knowledge that failure

11

SLIP OPINION

to pay the Supreme Court license fee will result in his suspension," the Rule does not provide a delinquent lawyer notice that he or she is in violation of the Rule before the automatic suspension. *See In re Lewis*, *supra*. In other words, a lawyer may know of the Rule but may not be aware, until it is too late, that his or her fee did not reach the clerk's office. Additionally, we do not find any merit to Chandler's argument that a delinquent lawyer voluntarily gave up his or her license. Under the Rule, a lawyer's fee could theoretically get lost in the mail or even be miscredited by the clerk's office, and a lawyer would have no notice or any opportunity to have the mistake corrected prior to the suspension, even though the mistake was made through no fault of the attorney's own and clearly was not the product of his or her wish to "voluntarily give up" the license. Therefore, we find that Rule VII(C) is unconstitutional to the extent that it provides for an automatic suspension of a lawyer's license without procedural due process, and we affirm the circuit court's ruling on this issue.[1]

---

[1] The dissent by Justice Corbin raises three arguments in concluding that the majority errs in holding that Rule VII(C) is unconstitutional to the extent that it provides for an automatic suspension of a lawyer's license without procedural due process. First, the dissent sua sponte argues that Foster lacks standing. However, this issue was not raised below nor on appeal, and we have repeatedly held that standing is not a question of subject-matter jurisdiction. *Chubb Lloyds Ins. Co. v. Miller Cnty. Cir. Ct.*, 2010 Ark. 119, 361 S.W.3d 809; *Foremost Ins. Co. v. Miller Cnty. Cir. Ct.*, 2010 Ark. 116, 361 S.W.3d 805; *Muccio v. Hunt*, 2014 Ark. 35. Furthermore, even if the parties had raised this argument to the circuit court, any "[a]rguments made below but not argued on appeal are deemed to be abandoned." *Vibo Corp. v. State ex rel. McDaniel*, 2011 Ark. 124, 380 S.W.3d 411. Second, the dissent sua sponte argues that we should have considered whether "Foster's right to run for or hold public office is a protected right or privilege" rather than "Foster's right or privilege to practice law." The dissent even admits that the circuit court did not consider this issue, and [i]t is well-settled that this court will not address an argument raised for the first time on appeal, even a constitutional argument." *Brown v. Kelton*, 2011 Ark. 93, at 8, 380 S.W.3d 361, 366. Furthermore, the third-party complaint specifically alleged that "[p]rior to having

Affirmed.

Special Justices RAYMOND R. ABRAMSON, WOODY BASSETT, and TODD TURNER join in this opinion.

HART, J., concurs in part and dissents in part.

CORBIN, J., dissents.

DANIELSON, BAKER, and GOODSON, JJ., not participating.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.** Because I conclude that it is unnecessary to reach the issue, I respectfully dissent from the majority's holding that Rule VII(C) of the Rules Governing Admission to the Bar is unconstitutional.

Judge H.G. Foster filed a third-party complaint against Leslie Steen, Clerk of the Arkansas Supreme Court, in which Foster asserted that he has a property right to his law license that cannot be taken from him without first affording him procedural due process. He

---

the privilege to practice law taken, the Plaintiff under the Arkansas Constitution Section 2 and The Fourteenth Amendment to the United States Constitution was entitled to notice, an opportunity to be heard, an opportunity to confront adverse witnesses and a hearing before an impartial decision maker." Finally, the dissent raises the argument that pre-deprivation notice and opportunity have not always been required and that "prompt post-deprivation review to correct administrative error can satisfy minimal due-process concerns," citing to *Miller v. Ark. Dep't of Fin. & Admin.*, 2012 Ark. 165, 401 S.W.3d 466. However, Rule VII(C) fails to provide for either a pre- or post-deprivation opportunity for a hearing and therefore fails to satisfy minimum due process to the extent that a lawyer's license is automatically suspended.

In her dissent, we also find that Justice Hart errs in finding that the due-process issue raised in Foster's third-party complaint is moot. However, even if the mootness doctrine did apply under these circumstances, all of this court's recognized exceptions to the mootness doctrine apply here.

further asserted that Rule VII(C), which provides that "[f]ailure to pay the annual license fee . . .shall automatically suspend the delinquent lawyer from the practice of law in Arkansas," deprives him of due process because the Rule does not provide for notice and an opportunity to be heard and confront adverse witnesses before an impartial decision maker prior to the suspension.

We have affirmed the circuit court's decision that Judge Foster is an eligible candidate; thus, we need not decide the issue raised in this case. Had we concluded that Judge Foster was no longer licensed for Amendment 80 purposes, then it would have been incumbent upon this court to consider whether the automatic suspension deprived Judge Foster of due process. If we had then answered that question in the affirmative, as the majority has done, then that question would have resolved Judge Foster's eligibility claim because Rule VII(C) would have been declared unconstitutional and Judge Foster would have remained licensed despite the unconstitutional, automatic suspension. However, we have held that Judge Foster is an eligible candidate; therefore it is not necessary to consider Judge Foster's eligibility. If an issue can be resolved without reaching constitutional arguments, it is our duty to do so. *Tornavacca v. State*, 2012 Ark. 224, at 15, 408 S.W.3d 727, 737.

The majority may be treating Judge Foster's third-party complaint as an independent cause of action that must be addressed, even though we hold that Judge Foster is an eligible candidate. Here, however, the evidence indicates that Judge Foster accepted the consequences of the suspensions from the practice of law by paying the fines and penalties. Thus, the issue regarding the constitutionality of the rule is moot because Foster paid the annual license fee

14

and the penalty. *See Centr. Emergency Med. Servs., Inc. v. State*, 332 Ark. 592, 966 S.W.2d 257 (1998) (dismissing an appeal from criminal contempt order as moot because the appellant paid the fine that the circuit court had imposed).

As a general rule, the appellate courts of this state will not review issues that are moot because to do so would be to render an advisory opinion. *Deer/Mt. Judea Sch. Dist. v. Kimbrell*, 2013 Ark. 393, at 22, ___ S.W.3d ___, ___. A case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. *Id.*, ___ S.W.3d at ___. Because Judge Foster accepted the suspensions and paid the annual license fees and penalties, the question is moot. We have recognized two exceptions to the mootness doctrine: that the issue is capable of repetition, yet evading review; and that the issue raises considerations of substantial public interest which, if addressed, would prevent future litigation. *Id.*, ___ S.W.3d at ___. These exceptions, however, do not apply here. In the future, an attorney who does not pay the annual license fee may litigate the automatic suspension without paying the license fee or the penalty. In those circumstances, the issue will be raised, and review will be appropriate.

The case should be remanded for entry of a decree stating that the grounds upon which the circuit court relied for entering the declaratory judgment and injunction are moot. *See City of Clinton v. S. Paramedic Servs., Inc.*, 2012 Ark. 88, at 11–12, 387 S.W.3d 137, 142-43.

**DONALD L. CORBIN, Justice, dissenting.** I do not agree with the majority's conclusion that an attorney who has failed to timely pay the annual fee required to maintain his attorney's license is an eligible candidate for circuit judge in this state under amendment

80, § 16(B) to the Arkansas Constitution. Accordingly, for the reasons stated in my dissent in *Kelly v. Martin*, 2014 Ark. ___, ___ S.W.3d ___, I dissent from the majority's conclusion that Appellee H.G. Foster is an eligible candidate for circuit judge.

I also dissent from the majority's declaration that "Rule VII(C) is unconstitutional to the extent that it provides for an automatic suspension of a lawyer's license without procedural due process." This declaration of constitutional infirmness is wholly unnecessary for several reasons; I briefly touch on three of them.

First, given the majority's conclusion that Foster's eligibility to hold judicial office is not affected by operation or application of Rule VII(C), Foster has suffered no injury and therefore has no standing to raise a constitutional challenge to Rule VII(C). The general rule is that one must have suffered injury or belong to that class that is prejudiced in order to have standing to challenge the constitutional validity of a law. *Tsann Kuen Enters. Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003). The majority's application of Rule VII(C) has not injured Foster in any way. Furthermore, a person to whom a statute or rule has been constitutionally applied may not mount a facial challenge on the ground that the statute or rule may conceivably be applied unconstitutionally to others in situations not presently before the court. *Ralph Loyd Martin Revocable Trust v. Ark. Midstream Gas Servs. Corp.*, 2010 Ark. 480, 377 S.W.3d 251. Both the circuit court and the majority of this court based their decisions to declare Rule VII(C) unconstitutional on hypothetical or theoretical situations in which a mistake may have possibly occurred in either the receipt or the posting of the license fee. But Foster does not allege that his delinquency was the result of any mistake; in fact, he

16

does not dispute that he was delinquent on the dates so found by the circuit court. In short, Foster has no injury and no standing to mount either an as-applied or a facial challenge to Rule VII(C).

Second, disregarding for the moment Foster's lack of standing, the analysis of both the majority opinion and the circuit court's order overlooks an essential point about the interest at stake here. Remember, this case is a pre-election challenge to Foster's eligibility as a candidate for circuit judge. This court has previously recognized that "'[t]he right to become a candidate for state office, like the right to vote for the election of state officers, is a right or privilege of state citizenship, not of national citizenship which alone is protected by the privileges and immunities clause.'" *Coffelt v. Bryant*, 238 Ark. 363, 371, 381 S.W.2d 731, 735 (1964) (citations omitted) (quoting *Snowden v. Hughes*, 321 U.S. 1, 7 (1944)). Even "an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause." *Snowden*, 321 U.S. at 7. Thus, if Foster's right to political office warrants any due-process protection at all, it must be found in the Arkansas Constitution. But here, neither the majority nor the circuit court considered whether Foster's right to run for or hold public office is a protected right or privilege under the Arkansas Constitution, or even, for that matter, under the Fourteenth Amendment to the United States Constitution. Rather, the majority and the circuit court considered the only interest at stake here to be Foster's right or privilege to practice law. Neither Chandler nor Foster complains in this lawsuit that Foster's right or privilege to practice law has been wrongfully deprived.

17

Third, again ignoring for the sake of argument Foster's lack of a protected interest and lack of standing to raise a constitutional attack on Rule VII(C), contrary to the majority's assertion otherwise, pre-deprivation notice and opportunity for a hearing are not always essential components of due-process protection. This court has recognized that prompt post-deprivation review to correct administrative error can satisfy minimal due-process concerns, especially in cases where summary suspensions of a license have occurred. *See, e.g.*, *Miller v. Ark. Dep't of Fin. & Admin.*, 2012 Ark. 165, at 12, 401 S.W.3d 466, 472–73 (quoting *Mackey v. Montrym*, 443 U.S. 1, 13 (1979) ("'[S]omething less than an evidentiary hearing is sufficient prior to adverse administrative action' as long as there is prompt post-deprivation review available for correction of administrative error.")). The majority fails to recognize Rule VII(C) provides for post-deprivation notice of, and remedy for, delinquencies and, without conducting the requisite balancing-of-interests analysis, erroneously concludes that pre-deprivation process is due here.

The majority opinion declares the Rule unconstitutional even though there is no injury and no standing to challenge the Rule. The effect of the majority's opinion here is to eliminate the requirement that a person have an injury or standing to mount either a facial or as-applied challenge to a statute or rule. On this basis, I strongly dissent from the majority's wholly unnecessary declaration that Rule VII(C) is unconstitutional.

Because Foster has no standing to raise the due-process challenge to Rule VII(C), it is wholly unnecessary for the majority opinion to address the challenge raised in Foster's third-party complaint. I would reverse the circuit court's order declaring the Rule to be

18



unconstitutional, and I would vacate the injunction on Steen's enforcement of the Rule.

*Dugger Law Firm*, by: *Terry Dugger*, for appellant.

*Martha Adcock*, General Counsel, and *L. Justin Tate*, Associate General Counsel, for appellee Secretary of State Mark Martin.

*David L. Hogue*, for appellee Faulkner County Election Commission.

*Jeff Rosenzweig*, for appellee/third-party appellee Harry G. Foster, II.

*Bristow & Richardson, PLLC*, by: *Bill W. Bristow*, for third-party appellant Leslie Steen.